## THOMAS v. BETHLEHEM STEEL CO.
### No. 2201.

Court of Appeal of Louisiana. First Circuit.
March 4, 1941.

Fred G. Benton and Durrett Hardin, all of Baton Rouge, for appellant.

Taylor, Porter, Brooks & Fuller, of Baton Rouge, for appellee.

OTT, Judge.

The purpose of the suit is to recover compensation in the sum of $8,000 for total and permanent disability on the basis of 400 weeks at the maximum rate of $20 per week, plus $250 medical expenses, on account of a hernia alleged to have been produced by an injury received on September 15, 1939, while plaintiff was working for the defendant company on the Mississippi River Bridge above Baton Rouge.

The defense raises two principal questions of fact; viz, whether or not plaintiff suffered an injury on September 15, 1939, which produced the hernia; or whether plaintiff sustained this hernia in October, 1937, while working for the Baton Rouge Sash & Door Works. It seems to be conceded that plaintiff now has a right inguinal hernia. The plaintiff claims that this hernia was produced by the injury which he received on September 15, 1939, while working for defendant, but the defendant denies that plaintiff had an accident or sustained an injury on the above date and while in its employ, and alleges and contends that plaintiff's present hernia and consequent disability therefrom resulted from an injury which he received in October, 1937, while working for another employer. No other issues are raised in the case, and it is practically conceded that if plaintiff did suffer this hernia while working for the defendant as aforesaid, he is entitled to compensation on the basis set out in his petition.

The trial judge, in a long and carefully considered opinion, reached the conclusion that plaintiff had failed to prove with sufficient certainty that he received an injury on September 15, 1939, which produced the hernia, and he further found that plaintiff's hernia resulted from an injury which he received in October, 1937, while working for the Baton Rouge Sash & Door Works. From a judgment which rejected his demands, plaintiff has appealed, and in a very earnest and forceful argument, orally and in brief, his counsel strenuously insist that the trial judge committed manifest error in his finding of fact, and they urge us to reverse this finding and grant their client compensation.

The record is voluminous, and it would serve no useful purpose for us to attempt to analyze and discuss all of the lay and medical testimony in detail. We believe it will be more conducive to clarity and brevity for us to discuss first the strongest and most convincing facts and circumstances which seem to support plaintiff's claim, and then consider the most important and persuasive facts and circum-

656

stances which appear to justify the conclusions of the trial judge.

In the first place, about ten days before plaintiff claims to have been injured he was examined by defendant's physician, Dr. Lorio, and was found to be in good physical condition. Dr. Lorio testified that he examined plaintiff for a hernia at that time and inserted his finger in the inguinal rings and had the patient put pressure on these parts which is the usual method of examination for hernia. While Dr. Lorio could not remember his examination of this particular individual, he signed a certificate to the effect that he had examined him and found him physically fit for employment. The doctor testified that he examined quite a number of men for employment and he cannot remember the details of each case, but he is quite sure that he examined this plaintiff for hernia as he examined all prospective employees for hernia.

Plaintiff was also examined twice by Dr. Nelkin, who was assisting Dr. Lorio in examinations for the defendant company and other employers. One of these examinations was made on February 3, 1938, for the Kansas City Bridge Company, and Dr. Nelkin's report of that examination shows no hernia. Plaintiff was again examined by Dr. Nelkin for this same company on January 24, 1939, and was passed as physically fit for employment, however, on the report card of this examination there is the notation, "rings slightly enlarged".

Both Dr. Lorio and Dr. Nelkin testified that enlarged rings did not mean that the person had a hernia, but they both state that some doctors will not pass an employee for hard work who has enlarged rings. Therefore, according to the examinations of these two doctors, plaintiff did not have a hernia in February, 1938 (shortly after he was injured in October, 1937, while working at the Baton Rouge Sash & Door Works), nor in January and the early part of September, 1939. All that it could be said that these examinations revealed were enlarged inguinal rings.

The trial judge reached the conclusion that, owing to the large number of cases examined by Drs. Lorio and Nelkin and the necessarily more or less routine examinations which they were required to make, a small hernia could have been present and could have escaped their notice. We may add to this the further observation that these two doctors seem to have a somewhat different idea as to just what is a hernia from the opinion of some other doctors. In fact, we gather from the testimony of all the doctors that there is room for a difference of opinion as to what is and what is not a hernia where the inguinal rings are enlarged and dilated, or the hernia is small and not fully developed. Furthermore, as the trial judge stated, not all hernias will incapacitate from work, doctors having different opinions as to the incapacity produced by the various types of hernia.

Another fact which appears to support plaintiff's claim is that he worked more or less regularly from the time he quit the Baton Rouge Sash & Door Works in the early part of 1938 until he claimed to have been injured in September, 1939, and during all this time, so far as the record shows, he was not disabled on account of a hernia nor did he make any complaint of any pain or discomfort caused from his work. The answer of defendant to this contention is that the small hernia which plaintiff had all during this time did not cause him sufficient trouble or discomfort to prevent him from carrying on his work in a normal way. In explanation of this fact, it may be plausibly urged that the plaintiff could have performed his regular work with this small inguinal hernia without serious pain and discomfort, and this explanation is not inconsistent with the medical testimony.

Then we have the testimony of the plaintiff himself that he received the accident on September 15, 1939, which produced the hernia. His account of the accident in substance is as follows: He and three other men were working on a machine called a "hell dog" used to drive out pins and rivets. This machine operates like an air gun, the compressed air moves a piston or plunger back and forth in a barrel so as to strike a heavy blow at one end of the instrument. The instrument is three or four feet long and three or four inches in diameter. Plaintiff was holding the barrel of this hell dog, and the jar or vibration resulting from the operation of the instrument caused a pain in his lower right side between 12:30 and 1:30 o'clock on September 15th, just after the noon hour. He says that when the pain struck him he gritted his teeth and threw his hand to his side. This was the last pin driven with the hell dog and the sub-foreman told him to catch the rest of the pins that were driv-

en out with a chisel. He did not tell the foreman nor any of the men working with him about the pain because he did not think it was serious.

About two o'clock that day plaintiff says he told George Couvillion, a painter on the bridge, about the pain in his side; that they met at the water barrel and Couvillion asked him why he was limping and he replied that while he was working on the hell dog, it hit him in the side. Plaintiff further testified that he told a Mr. Rodriguez when he got off from work that day about getting hurt and told his family about it when he got home. He also told a neighbor, Mr. Guillory, who came to his home that night.

Couvillion, Rodriguez and Guillory corroborate plaintiff on his statement that he told them about receiving the injury; Couvillion testifying that plaintiff came up to the water keg limping and on being asked about it, plaintiff replied that a pain had struck him while he was working on the hell dog; Rodriguez testifying that when plaintiff got off from work that day, he went home with Rodriguez and told him that he hurt his side on the hell dog; Guillory testifying that he was at plaintiff's home that evening when he came in from work and told Guillory that he was not feeling well, that his side was hurting and he went to bed a few minutes later. Guillory did not testify that the plaintiff told him that he hurt his side on the hell dog.

It will be observed that the only evidence of an accident is that given by the plaintiff himself on the witness stand and what he is supposed to have told these three men. The trial judge did not believe the testimony of Couvillion and doubted that of Rodriguez. And we might add here that it is significant that plaintiff did not tell Guillory the same evening he was complaining of pain in his side that he had gotten hurt on the hell dog which would have been the natural thing for him to have told a close friend and neighbor. It is true that two or three other witnesses testified that after September 15th, plaintiff continued to complain of pain in his side and looked like he did not feel well. However, that is not inconsistent with the contention that this condition may have resulted from the old hernia which defendant claims he sustained in 1937.

We will now consider a few of the facts and circumstances which support the defense and the judgment rendered below. Plaintiff, together with other men, was laid off on September 15, 1939, on account of a shortage in steel and not because of any injury. Almost daily thereafter until December 14th following, plaintiff called back at the bridge to see if he was needed for further work. At no time during this three months did he tell any of the officers or foremen of the company that he had hurt himself on the hell dog.

On December 14th, plaintiff was called by one of the officials of the company to report for work that day, and he was requested to have an examination made by Dr. McVea. This doctor found that plaintiff had a right inguinal hernia with a weak ring. Dr. McVea, in order to confirm his diagnosis, sent the plaintiff to Dr. Chamberlin for an examination. Dr. Chamberlin found that he had examined plaintiff for the Baton Rouge Sash & Door Works in October, 1937, and located in his files a card on which he had noted his findings on the previous occasion. This history card shows the following memorandum made by the doctor on this previous examination:

"On Wednesday October 6, 1937 was shoving on a machine, was straining when a sudden sharp pain struck him in his right side. Worked until Saturday when pain was so severe that he had to stop work. Pain is still severe."

Examination: "There seems to be a break in abdominal wall just below McBurney's point. Palpation shows a gurgling mass which can be reduced when patient is prone and knees flexed."

On a re-examination of plaintiff on December 14, 1939, Dr. Chamberlin found that he had the same condition then as he had in October, 1937, and so reported to Dr. McVea. Plaintiff did not tell either Dr. McVea or Dr. Chamberlin that he had hurt his side on the hell dog. It was not until after he was turned down for employment by these two doctors because of the hernia that he made claim against the defendant for the alleged injury on September 15, 1939, notwithstanding that he had reported as ready to continue work almost daily for some three months.

The conclusion of Dr. Chamberlin that plaintiff had a hernia when he examined him in 1937 and had the same hernia when he re-examined him in December, 1939, is vigorously attacked by counsel for plaintiff, but is strenuously defended by counsel for defendant. It appears also that the trial judge was very much impressed with

the correctness of Dr. Chamberlin's opinion and based his findings and judgment very largely on the conclusion of this doctor—that plaintiff had the same hernia in 1937 that he had in 1939. Some of the reasons why plaintiff's counsel contend that too much reliance can not be placed on Dr. Chamberlin's opinion are because of the fact that when he made a diagnosis and record of the plaintiff's condition in 1937, he did not pronounce it an inguinal hernia; that he indicated his doubt as to the nature of his condition when he stated in the report that there "seems" to be a break in the abdominal wall just below McBurney's point; that if there was a gurgling mass just below this point, it would not indicate an inguinal hernia which would be two or three inches lower down; that Dr. Chamberlin would not state that at that time he inserted his finger in the inguinal ring and caused pressure to be applied so as to show an impulse, which is the usual and ordinary way of determining the presence of an inguinal hernia.

The explanation given by Dr. Chamberlin on the first of these points is that he made the record for his own use and information and conveyed his findings to Dr. Watson, who had sent plaintiff to him at that time for examination, and it was not customary for him to tell the patient what he found as the patient had been sent to him by another doctor. We do not find that the doctor has made a very satisfactory explanation as to why he used the words "there seems to be a break", thus indicating that he might have had some doubt at the time. Nor do we think his explanation of his report showing that the mass was found just below McBurney's point conveys the idea of an inguinal hernia, and it does seem to us that if the doctor at that time found an inguinal hernia he would have used words in his record to better indicate that finding. Other doctors testified that a break in the abdominal wall just below McBurney's point with a protruding mass there would be more indicative of a ventral hernia rather than an inguinal hernia. And we are also impressed with the fact that Dr. Chamberlin does not state positively in his examination of plaintiff in 1937 and also in 1939 that he followed the usual methods for determining the existence of an inguinal hernia, which methods other doctors indicate in their testimony are necessary in order to ascertain this kind of hernia.

Be that as it may, it does appear that plaintiff suffered an accident in October, 1937, accompanied by the usual symptoms of a hernia, viz, sharp pain and nausea, while he did not show any such symptoms when he claims to have been injured in September, 1939. The trial judge based his conclusion both on the failure of plaintiff to prove that he suffered an accident and on the proof that he considered sufficient to show that plaintiff sustained the hernia in 1937. While we cannot point out any error in either of these conclusions, yet we prefer to base our conclusion on the failure of plaintiff to prove with the necessary degree of certainty that he received an accident while working for the defendant and which accident produced the hernia that he now has.

Finding no error in the judgment appealed from, the same is hereby affirmed.